1   XAVIER BECERRA
    Attorney General of California
2   MICHAEL P. CAYABAN
    Supervising Deputy Attorney General
3   NOAH GOLDEN-KRASNER (SBN 217556)
    PHILLIP M. HOOS (SBN 288019)
4   Deputy Attorneys General
        600 West Broadway Ave., Suite 1800
5       San Diego, CA 92101
        P.O. Box 85266
6       San Diego, CA 92186-5266
        Telephone: (619) 738-9301
7       Fax: (619) 645-2012
        E-mail:  PhillipM.Hoos@doj.ca.gov
8   *Attorneys for Plaintiff People of the State of*
    *California, ex rel. the California Regional*
9   *Water·Quality Control Board, San Diego*
    *Region*
10
              IN THE UNITED STATES DISTRICT COURT
11
              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
12
13
14

15  | PEOPLE OF THE STATE OF CALIFORNIA, | Case No.  '18CV2050 JM   JMA |
    | Ex. Rel. THE REGIONAL WATER | |
16  | QUALITY CONTROL BOARD, SAN | |
    | DIEGO REGION, | |
17  | | COMPLAINT FOR |
    | Plaintiff, | DECLARATORY AND |
18  | | INJUNCTIVE RELIEF (CLEAN |
    | v. | WATER ACT, 33 U.S.C. § 1251 *et* |
19  | | *seq.*) |
20  | INTERNATIONAL BOUNDARY AND | |
    | WATER COMMISSION, UNITED STATES | |
21  | SECTION; JOSE NUÑEZ, in his capacity | |
    | as Acting Commissioner of the | |
22  | INTERNATIONAL BOUNDARY AND | |
    | WATER COMMISSION, UNITED STATES | |
23  | SECTION | |
    | Defendants. | |
24
25
26
27       Plaintiff, the People of the State of California, ex rel., the Regional Water

28  Quality Control Board, San Diego Region, alleges as follows:

                                   1

**INTRODUCTION**

1. This is an action for injunctive and declaratory relief challenging Defendants Jose Nuñez's and the United States International Boundary and Water Commission, United States Section's (together referred to herein as "USIBWC") repeated violations of the Federal Water Pollution Prevention and Control Act ("Clean Water Act") 33 U.S.C. section 1251 *et seq.*  USIBWC's Clean Water Act violations relate to the continuing discharge of millions of gallons of waste— consisting of untreated sewage, bacteria, pesticides, chemicals, and heavy metals— from wastewater treatment facilities owned, operated, and controlled by USIBWC. This waste escapes from USIBWC's facilities and enters the Tijuana River, Tijuana River Estuary and ultimately into the Pacific Ocean, where it degrades California's water quality, pollutes California's beaches and shoreline, harms the unique natural environment of the area, and endangers public health.

2. Plaintiff the California Regional Water Quality Control Board, San Diego Region ("San Diego Water Board"), is an agency of the State of California and one of nine regional water boards whose mission is to preserve, protect, enhance and restore the quality and beneficial uses of California's water resources for the benefit of present and future generations.   Cal. Water Code §§ 13000, 13001, 13200, 13201(a), 13241, and 13377.

3. The San Diego Water Board brings this action, on behalf of the People of the State of California, to ensure USIBWC complies with its obligations under the Clean Water Act and with the requirements and conditions of USIBWC's National Pollution Discharge Elimination System Permit, No. CA0108928 ("NPDES Permit")—which was issued by the San Diego Water Board as Order No. R9-2014-0009, as amended by Order Nos. R9-2014-0094 and R9-2017-0024. In so doing, the San Diego Water Board seeks to enjoin both the continuing, unlawful discharge of pollution from USIBWC's wastewater treatment facilities as well as USIBWC's failure to adequately prevent, monitor, or remediate those discharges, in violation of

2

1   Clean Water Act sections 301 and 402, 33 U.S.C. §§ 1311, 1342 (herein Sections
2   301 and 402, respectively).

3      4.   For nearly three years, spanning from at least April 2015 through February
4   2018, USIBWC repeatedly failed to properly manage and operate its wastewater
5   treatment facilities and comply with the terms of its NPDES Permit. USIBWC's
6   systematic NPDES Permit violations are the byproduct of its unwillingness to address
7   pollution that crosses into the United States from Mexico, absent being compelled
8   through legal action.

9      5.   Without the compulsion of a court order, USIBWC will continue to operate
10  its wastewater treatment facilities in violation of its NPDES Permit and the Clean
11  Water Act. If USIBWC fails to correct its on-going permit violations, water quality
12  within the Tijuana River, Tijuana River Estuary and the Pacific Ocean will be further
13  impaired to the detriment of the communities of San Diego County and those who
14  work and seek recreation in and around those areas.

15                          **JURISDICTION**

16     6.   This action arises under the Clean Water Act. This Court has jurisdiction
17  over the subject matter of this action pursuant to the Clean Water Act's citizen suit
18  provision, 33 U.S.C. § 1365(a), and federal question jurisdiction, 28 U.S.C. §§ 1331,
19  1346.

20     7.   USIBWC is subject to the jurisdiction of this Court under the terms of
21  Executive Order 12467, issued on March 2, 1984, which provides that the immunities
22  conferred on the International Boundary and Water Commission, as a public
23  international organization, by the International Organization Immunities Act "shall
24  not extend to the United States Section of the Commission in respect of matters
25  within the exclusive control, supervision or jurisdiction,...pursuant to international
26  agreements in force with the United Mexican States, statute or other authority."
27  Pursuant to a 1944 Treaty between the United States and Mexico, USIBWC has
28  exclusive control over the operation of its treatment facilities at-issue in this lawsuit.

                                  3

1    8.  USIBWC has also waived sovereign immunity to the claims asserted in

2    this Complaint.  33 U.S.C. §§ 1323, 1365(a).

3    9.  On May 14, 2018, the San Diego Water Board provided USIBWC with

4    notice of the Clean Water Act violations alleged in this Complaint and has otherwise

5    complied with any and all procedural prerequisites necessary for filing this

6    Complaint.  The San Diego Water Board transmitted the notice letter to USIBWC

7    via certified mail, return receipt requested.  On that same day, copies of the notice

8    were sent to: The Administrator of the United States Environmental Protection

9    Agency; the United States Environmental Protection Agency, Pacific Southwest,

10   Region IX; the United States Attorney General; and the California State Water

11   Resources Control Board, Office of Enforcement.  A copy of the San Diego Water

12   Board's notice letter is attached hereto as Exhibit 1 and incorporated herein by this

13   reference.

14                              **VENUE**

15   10. Venue in this Court is proper pursuant to Clean Water Act section

16   505(c)(1), 33 U.S.C. § 1365(c)(1), because the wastewater discharges from

17   USIBWC's facilities violated and are violating effluent standards or limitations of

18   the Clean Water Act, and occurred in San Diego County, California.  San Diego

19   County falls within this judicial district.  Venue is also proper under 28 U.S.C. §

20   1391(e)(1), because the events or omissions giving rise to the San Diego Water

21   Board's claims have occurred, are occurring, and will continue to occur in this

22   judicial district.

23                              **PARTIES**

24   11. Plaintiff San Diego Water Board is an agency of the State of California,

25   and one of nine regional water quality control boards.  Cal. Water Code §§ 13200,

26   13201(a).  The California Water Code vests the state's regional water quality control

27   boards with primary responsibility for regulating state water quality.  Cal. Water

28   Code §§ 13000, 13001.

Complaint For Declaratory and Injunctive Relief

12. The San Diego Water Board oversees all basins within California draining into the Pacific Ocean between the southern boundary of the Santa Ana region and the California-Mexico border. Cal. Water Code § 13200(f). The Tijuana River, its tributaries, the Tijuana River Estuary, and the Pacific Ocean in San Diego County are within the jurisdiction of the San Diego Water Board.

13. As part of its mandate, the San Diego Water Board is vested with specific powers and duties and authorized to administer and implement the Clean Water Act in California. The San Diego Water Board is a "citizen" within the meaning of Clean Water Act section 505(g), 33 U.S.C. § 1365(g), because its interest in ensuring compliance with the Clean Water Act and protecting water quality of waters of the state and of the United States is "adversely affected" by USIBWC's acts and omissions.

14. USIBWC is an agency of the United States. Pursuant to a 1944 Treaty between the United States and Mexico, USIBWC is responsible for addressing waste entering the United States from Mexico along the Tijuana River watershed. To fulfill its obligations, starting in 1996, USIBWC constructed a network of facilities designed for a single purpose: to capture and treat waste flows entering the United States from Mexico through the Tijuana River watershed (transboundary flows). This network includes:

a)    the South Bay International Wastewater Treatment Plant ("Plant"), a secondary treatment plant which receives wastewater from the Tijuana River watershed, treats the wastewater, and discharges the treated wastewater into the Pacific Ocean through the South Bay Ocean Outfall;

b)    a system of five concrete channels and detention basins located in canyons within San Diego County ("canyon collectors"), just north of the United-States-Mexico border and west of the main channel of the Tijuana River. USIBWC designed the canyon collectors to capture dry-weather, transboundary flows from Mexico and convey that wastewater to the Plant; and,

1             c)     two pump stations to facilitate the diversion of wastewater from

2 the canyon collectors to the Plant for treatment.

3      15. In order to lawfully operate these facilities, USIBWC applied for and

4 received a NPDES permit from the San Diego Water Board in 2014 to allow the

5 discharge of treated waste into the Pacific Ocean.  The San Diego Water Board

6 alleges that the Clean Water Act violations at issue in this litigation arose through

7 USIBWC's delinquent operation and maintenance of these facilities between April

8 2015 and February 2018, resulting in the improper discharge, monitoring, and

9 recovery of waste into waters of the state and United States.

10      16. Defendant Jose Nuñez is Acting Commissioner of the USIBWC is an

11 individual responsible for implementing the actions necessary to remedy the

12 violations of law alleged by the Plaintiff in this action, and is named only in his

13 official capacity.

14          **CLEAN WATER ACT AND NPDES PERMIT REQUIREMENTS**

15      17.  Congress passed the Clean Water Act to "restore and maintain the

16 chemical, physical, and biological integrity of the Nation's waters[.]" 33 U.S.C. §

17 1251(a).

18      18.  To protect the chemical, physical, and biological integrity of the nation's

19 surface waters, the Clean Water Act prohibits the discharge of pollutants from point

20 sources to navigable waters of the United States except as authorized. 33 U.S.C. §§

21 1251(a)(1) and (3), 1311(a).  The National Pollutant Discharge Elimination System

22 ("NPDES") program was created in 1972 as a federal permit program designed to

23 regulate the discharge of pollutants.  33 U.S.C. § 1342; 40 C.F.R. §§ 122, *et seq.*

24 Under the NPDES program, discharges of pollutants are prohibited unless discharged

25 in compliance with an NPDES permit.  Among other things, Section 301, 33 U.S.C.

26 § 1311(a), prohibits the discharge of pollutants from a point source to a water of the

27 United States without a NPDES permit.

28

Complaint For Declaratory and Injunctive Relief

19.   The United States Environmental Protection Agency ("EPA") is charged with the responsibility of administering the NPDES permit program unless EPA approves a state water quality control program to implement the NPDES requirements.   33 U.S.C. §§ 1251(d), 1342(b).   Pursuant to federal regulations, NPDES permits issued by states with approved programs must contain certain terms and conditions to safeguard water quality. 33 U.S.C. §§ 1311, 1342(a) and (b).

20.   California participates in the NPDES permit scheme pursuant to the Porter-Cologne Water Quality Control Act ("Porter-Cologne Act"). Cal. Wat. Code, §§ 13260-13276, 13370-13390. The EPA has approved the entire regulatory scheme set forth in the Porter-Cologne Act, which establishes a comprehensive statewide program for water quality administered through the State Water Resources Control Board ("the State Water Board") and the nine regional boards, within a framework of statewide coordination and policy. Cal. Wat. Code, §§ 174, 13001.

21.   The Porter-Cologne Act is intended to protect, restore, and prevent degradation of the quality and beneficial uses of the waters of the state and of the United States. Cal. Wat. Code, §§ 13000, 13050(f), 13241, 13263. As is authorized under the Clean Water Act, the Porter-Cologne Act adopted more stringent controls on discharges into the waters of the state and United States than are required under the Clean Water Act. 40 C.F.R. §§ 131.2, 130.3; Cal. Wat. Code, § 13377 *et seq*.

22.   As directed by the Clean Water Act, California adopted water quality standards for the ocean waters in a California Ocean Plan, and for each region of California, as set forth in regional water quality control plans ("basin plans"). As relevant to this matter, water quality standards for the San Diego region, are set forth in both the California Ocean Plan, and the San Diego Basin Plan adopted by the San Diego Water Board and approved by the State Water Board. The water quality objectives in the California Ocean Plan, San Diego Basin Plan, and other relevant plans, policies, and regulations, are designed to protect the water's beneficial uses, which include recreation, the preservation and enhancement of fish, wildlife, and

7

1   other aquatic resources, and the domestic or municipal water supply. Cal. Wat. Code,

2   §§ 13050(j), 13170, 13240, 13241.

3       23.   The principal means of regulating activities which may affect water

4   quality and implementing basin plans in California is through issuance of "waste

5   discharge requirements," which are equivalent to permits issued under the Clean

6   Water Act. California Water Code section 13376 sets forth the discharger's duties to

7   obtain waste discharge requirements and is modeled on the provisions of the Clean

8   Water Act. *Compare* Cal. Wat. Code § 13376, *with* 33 U.S.C. §§ 1311, 1342.

9       24.   Accordingly, NPDES permittees must, among other requirements,

10  establish and maintain records and implement monitoring programs which require

11  regular reporting to the permitting agency.   33 U.S.C. § 1342; Cal. Water Code §

12  13383.

13      25.   Any violation of a NPDES permit issued by the San Diego Water Board

14  constitutes an independent violation of the Clean Water Act under Section 402, 33

15  U.S.C. §1342.

16                      **FACTUAL BACKGROUND**

17  **I.   USIBWC IS RESPONSIBLE FOR RESOLVING CROSS-BORDER
         POLLUTION WITHIN THE TIJUANA RIVER WATERSHED.**

18

19      26.   The Tijuana River watershed encompasses 1750 square miles and

20  straddles the United States-Mexico border.  The vast majority of the watershed is

21  located in Mexico and drains principally into the Tijuana River, which crosses the

22  border into California through a flood conveyance channel—operated by the

23  USIBWC—and feeds the Tijuana River Estuary within San Diego County.

24      27.   The Tijuana River Estuary is one of the last, intact, saltwater estuaries in

25  California and is home to numerous migratory species, and species at-risk for

26  extinction and protected under the California Endangered Species Act.

27      28.   The Tijuana River enters the estuary and eventually flows into the Pacific

28  Ocean near the coastal city of Imperial Beach.

                              8

29.  For decades, untreated wastewater, sewage, trash, and sediment from the Tijuana River watershed flowed into San Diego County, and ultimately into the Pacific Ocean.  This waste is particularly toxic.  It can contain excessive levels of pesticides, heavy metals, and bacteria that are harmful to human health.  The amount of waste entering California from the Tijuana River watershed has only increased due, in part, to population growth within the City of Tijuana.  As a result of continued pollution entering the United States through the Tijuana River watershed, the lower six miles of the Tijuana River and Tijuana River Estuary have been listed by the State Water Board as impaired water bodies pursuant to Clean Water Act section 303(d), 33 U.S.C. § 1313(d).

30.  The consistent presence of pollutants within the Tijuana River and Tijuana River Estuary preclude attainment of water quality objectives set by the State of California pursuant to the Porter-Cologne Act, and impairs the beneficial uses of these water bodies, including protecting aquatic species and habitat as well as human health.  In order to protect the public from the impacts of this waste, beaches along the City of Imperial Beach—near the confluence of the Tijuana River Estuary and the Pacific Ocean—are often closed for much of the year.  Indeed, these beaches were closed over 200 days in 2015, and approximately 150 days in both 2016 and 2017.

31.  Pursuant to a 1944 Treaty between the United States and Mexico— entitled *Utilization of Waters of the Colorado River and Tijuana Rivers and of the Rio Grande*—the International Boundary and Water Commission ("IBWC") was authorized to resolve these water quality issues at border and trans border rivers and streams.  The IBWC consists of two sections, the USIBWC and the Mexico Section (also referred to as La Comision Internacional de Limites y Aguas).  Each section has exclusive jurisdiction and control over works constructed, acquired and/or used to fulfill its treaty obligations on its respective side of the border.

32.  The 1944 Treaty is amended through Minutes approved by both the United States and Mexico.  In recognition of the health and environmental problems

9

1  associated with increasing cross-border flows of waste from Mexico into the United
2  States, on July 2, 1990, the two countries approved Minute 283—entitled *Conceptual*
3  *Plan for the International Solution to the Border Sanitation Problem in San Diego,*
4  *California/Tijuana, Baja California*.   Minute 283 provided the framework for
5  designing, constructing and operating a network of facilities to treat transboundary
6  flows from the Tijuana River watershed entering into the United States, consisting of
7  the Plant, the five canyon collectors, and two pump stations (collectively the
8  "Facilities").

9      33.  The five canyon collectors were designed by USIBWC to funnel and
10  capture dry-weather, wastewater flowing into California from the Tijuana River
11  watershed and City of Tijuana, which flows have a great potential to cause or
12  contribute to the degradation of water quality in the state.

13      34.  The canyon collectors consist of concrete channels of varying lengths,
14  detention basins, and screened inlets.  After crossing the border, waste is funneled
15  through concrete-lined channels and culverts into detention basins, where the flow is
16  halted by an earthen or concrete berms.  Once the waste is within a basin, wastewater
17  is diverted through a screened inlet, and travels to the Plant for treatment. The inlet
18  is manually opened or closed through the operation of a valve controlled by
19  USIBWC. Only when the inlet is open and unobstructed can wastewater flow toward
20  the Plant.  USIBWC, through its operation of the inlet valve and maintenance of the
21  inlet, controls the flow of wastewater within the canyon collectors to the Plant.

22      35.  The canyon collectors were constructed to capture dry-weather,
23  transboundary waste flows at five locations: Stewart's Drain, Silva Drain, Canyon
24  del Sol, Smugglers Gulch, and Goat Canyon.  USIBWC designed its canyon
25  collectors with varying levels of capacity. The maximum design capacity for each
26  canyon collector is as follows: Stewart's Drain—1.67 million gallons per day
27  ("MGD"); Silva Drain—0.33 MGD; Canyon del Sol—0.67 MGD; Smuggler's
28  Gulch—4.67 MGD; and Goat Canyon—2.33 MGD. The canyon collector capacities

Complaint For Declaratory and Injunctive Relief

1  were provided to the San Diego Water Board by USIBWC and incorporated into the
2  NPDES Permit.  When flows in the canyons exceed the maximum design capacity of
3  the canyon collectors, or if the canyon collectors are not properly operated or
4  maintained, waste overflows from these facilities and discharges into waters of the
5  state and waters of the United States.

6  　36.  Upon entering the inlet, wastewater is diverted to the Plant from the
7  canyon collectors largely by gravity.  However, wastewater captured at the Goat
8  Canyon and Smuggler's Gulch canyon collectors are directed toward the Plant
9  through the Goat Canyon and Hollister pump stations, respectively.  Once the
10  wastewater reaches the Plant it is treated to secondary treatment effluent limitations
11  standards.  The treated wastewater is then sent to the South Bay Ocean Outfall and
12  ultimately discharged into the Pacific Ocean.

13  　37.  At all relevant times, USIBWC owned and controlled the Facilities.

14  **II.  USIBWC's NPDES PERMIT REQUIREMENTS**

15  　38.  On or about November 14, 1996, the San Diego Water Board issued Order
16  No. 96-50 regulating waste discharge from the Facilities under the provisions of
17  Porter-Cologne Act, as well as regulations adopted by the State Water Board.  The
18  term "waste" is defined as "sewage and any and all other waste substances, liquid,
19  solid, gaseous, or radioactive, associated with human habitation, or of human or
20  animal origin, or from any producing, manufacturing, or processing operation,
21  including waste placed within containers of whatever nature prior to, and for
22  purposes of, disposal."  Cal. Wat. Code § 13050(d).

23  　39.  On June 26, 2014, the San Diego Water Board issued the NPDES Permit
24  to USIBWC (Order No. R9-2014-0009, as amended by Order No. R9-2014-0094)—
25  which updated prior waste discharge requirements for the Facilities and incorporated
26  discharge restrictions set forth in chapter 4 of the San Diego Basin Plan.  A copy of
27  the NPDES Permit is attached as Exhibit 2.

28

11

1    40.  The NPDES Permit imposed numerous requirements on USIBWC related

2  to the operation of the Facilities.  The provisions relevant to this Complaint are as

3  follows:

4  **Unlawful Discharges**

5    a)    "The discharge of waste from the Facilities to a location other

6  than [the South Bay Ocean Outfall], unless specifically regulated by this [permit] or

7  separate [Waste Discharge Requirements] is prohibited." (Exh. 2 at p. 4.)

8    b)    The discharge prohibition, described above, "applies to any dry

9  weather discharge of waste overflowing the canyon collectors."  (Exh. 2 at p. F-36.)

10    c)    Weather is defined as dry if the preceding 72 hours have been

11  without precipitation greater than 0.1 inches based on a rain gauge at Goat Canyon.

12  (Exh. 2 at p. A-11.)

13    d)    USIBWC must comply with "Discharge Prohibitions contained

14  in chapter 4 of the San Diego Basin [Plan]," which plan prohibits "discharge of waste

15  to land, except as authorized by [Waste Discharge Requirements] or the terms

16  prescribed in Water Code section 13264." (Exh. 2 at pp. 4, G-1; see also Exh. 2 at p.

17  F-36.)

18    e)    The San Diego Basin Plan also prohibits "the discharge of waste

19  to waters of the state in a manner causing, or threatening to cause a condition of

20  pollution, contamination or nuisance as defined in Water Code section 13050[]."

21  (Exh. 2 at p. G-1; see also Exh. 2 at pp. 4, F-36.)[1]

22

23    [1] The California Water Code defines "contamination" to mean "an
   impairment of the quality of the waters of the state by waste to a degree which
24  creates a hazard to the public health through poisoning or through the spread of
   disease." Cal. Wat. Code § 13050(k). The California Water Code defines nuisance
25  to mean "anything which meets all of the following requirements: (1) Is injurious to
   health, or is indecent or offensive to the senses, or an obstruction to the free use of
26  property, so as to interfere with the comfortable enjoyment of life or property. (2)
   Affects at the same time an entire community or neighborhood, or any considerable
27  number of persons, although the extent of the annoyance or damage inflicted upon
   individuals may be unequal. (3) Occurs during, or as a result of, the treatment or
28  disposal of wastes." Cal. Wat. Code, § 13050(m).

Complaint For Declaratory and Injunctive Relief

1    **Maintenance of the Facilities**

2            f)     In order to comply with its discharge requirements, USIBWC

3    "shall at all times properly operate and maintain all facilities and systems of treatment

4    and control (and related appurtenances) which are installed or used by [USIBWC] to

5    achieve compliance with the conditions of this [Permit]…This provision requires the

6    operation of backup or auxiliary facilities or similar systems that are installed by

7    [USIBWC] only when necessary to achieve compliance with the conditions of this"

8    NPDES Permit. (Exh. 2 at D-1.)

9

10    **Spill Prevention and Response Requirements**

11            g)     To address waste spills from USIBWC Facilities, the NPDES

12    Permit requires that USIBWC "prepare and submit a *Spill and Transboundary*

13    *Wastewater Flow Prevention and Response Plan* [Prevention/Response Plan] …to

14    the San Diego Water Board." (Exh. 2 at p. 16.)

15            h)     "At a minimum, the [Prevention/Response Plan] shall address the

16    three types of events identified above in section VI.C.2.a.i." (*Id.*) The three types of

17    events requiring implementation of the Prevention/Response Plan include:

18                i.     "Facilities Spill Events"—defined as wastewater flows that

19    escape from a specific USIBWC facility, such as a pump station;

20                ii.   "Flow Event Type A"—defined as dry-weather,

21    transboundary flows traveling into the canyon collectors, but not diverted by the

22    canyon collectors; and

23                iii.   "Flow Event Type B"—defined as dry-weather spill or dry

24    weather transboundary flows (not categorized in other Event Types above) that

25    creates, or threatens to create, pollution or nuisance conditions in waters of the state

26    and/or United States. (Exh. 2 at p. 15.)

27

28

Complaint For Declaratory and Injunctive Relief

1                   iv.   "Transboundary flows" constitute "wastewater and other

2   flows that cross the international border from Mexico into the United States." (Exh.

3   2 at p. A-10.)

4                i)   To avoid spills associated with any of these three event types, the

5   Prevention/Response Plan requires USIBWC "provide a program for routine

6   inspection and preventative maintenance of the entire wastewater system that is

7   owned and operated by [USIBWC.]" (Exh. 2 at p. 18.)

8                j)   To ensure USIBWC properly responds to spills from the three

9   event types, the Prevention/Response Plan must "describe guidelines and procedures

10   for taking all feasible steps and necessary remedial actions to 1) control or limit the

11   spill and/or transboundary wastewater flow volume, 2) terminate the spill and/or

12   transboundary wastewater flow, and 3) recover as much of the spill and/or

13   transboundary wastewater flow volume as possible for proper disposal, including any

14   wash down water." (Exh. 2 at p. 20.)

15                k)   Upon drafting its Prevention/Response Plan, USIBWC was

16   required to submit it to the San Diego Water Board, receive comments on the

17   Prevention/Response Plan, and submit the revised Prevention/Response Plan to the

18   San Diego Water Board.  USIBWC must "commence with implementation of the

19   [Prevention/Response Plan] immediately upon submission of the revised

20   [Prevention/Response Plan] unless otherwise directed in writing by the San Diego

21   Water Board Executive Officer." (Exh. 2 at p. 22.)

22

23   **Monitoring and Reporting Requirements**

24               l)   USIBWC "shall comply with the [Monitoring and Reporting

25   Program], and future revisions thereto, in Attachment E of" the NPDES Permit.

26   (Exh. 2 at p. 14.)

27               m)   As part of its monitoring requirement, USIBWC must "conduct

28   daily inspections" of the canyon collectors "for the transboundary wastewater flows."

14

1   (Exh. at p. E-32.)  The inspections "shall be documented, recorded, and contain the
2   following information:

3                              i.     The monitoring location name and/or GPS coordinates,
4   date, and time of inspection;

5                              ii.    The weather conditions at the time of inspection

6                              iii.   The operational condition of the canyon collector system;
7   and,

8                              iv.    If a flow is observed passing [USIBWC's] canyon collector
9   system, the approximate date/time and amount of the last precipitation event, the
10  estimated total volume diverted into [USIBWC's] canyon collector system, the
11  estimated total volume that passes [USIBWC's] canyon collector system, and a
12  description of the flow estimate methodology[.]" (Exh. 2 at p. E-33.)

13              n)    In addition, USIBWC is required to "report spills and
14  transboundary wastewater flows in accordance with" specified procedures for
15  Facilities Spill Events and Flow Events Type A.

16                              i.     For a Flow Event Type A, "if there is a transboundary flow
17  that passes [USIBWC]'s canyon collector system observed at the time of inspection,
18  [USIBWC] shall monitor the flow for" specified water quality parameters including
19  enterococcus and fecal coliform concentrations.    (Exh. 2 at p. E-33)    These
20  wastewater spills must "be tabulated on a monthly basis and summarized in the
21  monthly self-monitoring report," and provided to the San Diego Water Board. (Exh.
22  2 at pp. E-34.)

23                              ii.    For Facilities Spill Events, USIBWC must "include a
24  detailed summary of spills in the monthly self-monitoring report for the month in
25  which the spill occurred," and submit the same to the San Diego Water Board. (Exh.
26  2 at p. E-31.)

27

28

Complaint For Declaratory and Injunctive Relief

1    **Receiving Water Limitations**

2              o)    USIBWC must also perform "receiving water and sediment

3    monitoring in the vicinity of the" South Bay Ocean Outfall. As part of its monitoring,

4    USIBWC must test specific shoreline stations for several water quality parameters

5    including fecal coliform and enterococcus. (Exh. 2 at pp. E-14,15.)

6              p)    This testing must be performed to ensure that "[t]he discharge of

7    waste [by USBIWC] shall not cause or contribute to violation of [receiving water]

8    limitations in the Pacific Ocean.   Compliance with these limitations shall be

9    determined from samples collected at stations representative of the area within the

10   waste field where initial dilution is completed." (Exh. 2 at p. 11.) These receiving

11   water limitations include specific concentration levels for fecal coliform and

12   enterococcus bacteria.

13   **III. USIBWC FACILITIES FAILED TO COMPLY WITH ITS NPDES PERMIT.**

14       41. Based on USIBWC's spill reports and daily inspection logs, between April

15   19, 2015 and October 19, 2017, USIBWC reported that its canyon collectors at

16   Stewart's Drain, Canyon del Sol, and Goat Canyon failed to divert more than 11

17   million gallons of waste to the Plant.   Indeed, as illustrated in Table A below,

18   USIBWC reported that there were eleven separate Type A discharges events from its

19   canyon collectors. Moreover, on February 27, 2018, USIBWC reported that the Goat

20   Canyon pump station malfunctioned and released over fifty thousand gallons of

21   waste.

22

23

24

25

26

27

28

Complaint For Declaratory and Injunctive Relief

1
2

| TABLE A | | | | | | | |
|---|---|---|---|---|---|---|---|
| Spill Date | Volume (gallons) | Discharge Type | Amount Recovered | Canyon Collector | Inlet Obstruction | Discharge Monitoring |
| 4/19/15 | 2,000 | Type A | N/A | Canyon del Sol | N/A | Incomplete |
| 1/28/16 | 2,238 | Type A | 0 | Stewart's Drain | No | Incomplete |
| 9/5/16 | 390 | Type A | 0 | Canyon del Sol | Yes | Incomplete |
| 3/1/17 | 145,000 | Type A | 0 | Goat Canyon | Yes | Incomplete |
| 4/24/17 | 12,850 | Type A | 0 | Stewart's Drain | Yes | Incomplete |
| 4/30/17 | 645,000 | Type A[2] | 0 | Goat Canyon | N/A | None |
| 5/21/17 | 1,560 | Type A | 0 | Stewart's Drain | Yes | None |
| 5/24/17 | 3,800 | Type A | 0 | Stewart's Drain | Yes | None |
| 6/27/17 | 5,500,000 | Type A | 0 | Canyon del Sol | Yes | Incomplete |
| 10/6/17 | 4,152,000 | Type A | 0 | Canyon del Sol | Yes | Incomplete |
| 10/19/17 | 1,207,000 | Type A | 0 | Canyon del Sol | Yes | Incomplete |
| 2/27/18 | 54,000 | Facility Spill | 0 | Goat Canyon | Yes | N/A |

42. The discharges identified in Table A did not occur at the South Bay Ocean Outfall, as was required by the NPDES Permit.

43. Instead, on information and belief, the San Diego Water Board alleges that the pollution from these discharges flowed onto state land, the Tijuana River, Tijuana River Estuary, and/or the Pacific Ocean.

44. On information and belief, the spills identified in Table A as Type A discharge events were due to USIBWC's failure to properly maintain and operate its canyon collectors. Specifically, these discharges occurred during dry weather, because USIBWC failed to remove trash and other debris that interfered with the

---

[2] The discharge on April 30, 2017 was initially, and incorrectly, labeled as a Type B event by USIBWC.

1   diversion of wastewater through the inlet, and/or USIBWC's failure to properly
2   maintain the berms of the canyon collector detention basins.

3       45. The amount of waste discharged from these canyon collectors was less
4   than the canyon collectors' respective maximum capacities in all but three
5   instances—June 27, and October 6 and 19, 2017.

6       46. On information and belief, the spill resulting from the Goat Canyon pump
7   station resulted from the malfunction of equipment under USIBWC's control.

8       47. The USIBWC failed to take water samples from some, but not all, of the
9   discharge events described in Table A.   The testing of these samples revealed
10  multiple exceedances of water quality standards for fecal coliform and enterococcus
11  bacteria.  The waste discharged from these spill events also contained contaminants
12  including mercury, chloroform, dichlorobenzene, copper, nickel, zinc, oil, ammonia
13  grease, and suspended solids, among others.

14      48. These very contaminants were identified by the San Diego Water Board,
15  and selected for monitoring in the NPDES Permit because they contribute to the
16  ongoing threat to recreation and designated beneficial uses of the Tijuana River and
17  the Tijuana River Estuary.  (Exh. 2 at p. F-48.)

18      49. The USIBWC performed water quality testing along shoreline stations
19  during time periods corresponding to the Table A discharge events.   This testing
20  revealed exceedances of receiving water limitations for fecal coliform bacteria during
21  the months of January 2016, September 2016, and March, April, May, June, and
22  October 2017.  This same testing revealed that at least on one occasion, on June 27,
23  2017, a water sample exceeded the receiving water limitation standards for
24  enterococcus.

25      50.  On information and belief, the San Diego Water Board alleges that, based
26  on the contents of the water quality samples taken by USIBWC, the waste discharged
27  from the canyon collectors impaired water quality within the Tijuana River, Tijuana

28

Complaint For Declaratory and Injunctive Relief

1    River Estuary, and the Pacific Ocean, and impaired the beneficial uses of these water
2    bodies and contributed to the exceedance of receiving water limitations.

3        51. The full scope of water pollution impacts caused by USIBWC's canyon
4    collectors discharges, however, is not known because USIBWC failed to fulfill its
5    monitoring and reporting obligations for any of the Type A discharges outlined in
6    Table A.

7        52. Specifically, on at least three occasions—May 21, May 24, and April 30,
8    2017—USIBWC failed to collect and test water samples from these dry-weather
9    discharges for any of the specific contaminants identified by the NPDES Permit.

10       53. Moreover, even where USIBWC performed tests on water samples, it
11   failed to test or report test results for all parameters as required under the NPDES
12   Permit. USIBWC took water samples for eight of the eleven Type A discharges
13   events in Table A, occurring on April 19, 2015, January 29, 2016, September 5, 2016,
14   March 1, 2017, April 24, 2017, June 27, 2017, October 6, 2017, and October 19, 2017.
15   For each of these samples, USIBWC failed to test or report the test results for the
16   same six pesticides: demeton, guthion, malathion, mirex, methoxchlor, and parathion.
17   In addition, for the January 29, 2016, September 5, 2016, and April 24, 2017 samples,
18   USIBWC failed on test or report results for chronic toxicity, tetrachlorodibenzo-*p*-
19   dioxin, and/or asbestos.

20       54. USIBWC was also required to implement its Prevention/Response Plan to
21   prevent and respond to the incidents in Table A. USIBWC submitted its proposed
22   Prevention/Response Plan to the San Diego Water Board on December 22, 2014.
23   USIBWC submitted its revised plan to the San Diego Water Board on July 13, 2015.
24   The USIBWC was therefore required to implement this Prevention/Response Plan as
25   of that date. As required under the NPDES Permit, the Prevention/Response Plan
26   mandated that USIBWC coordinate cleanup of Type A or Facility Spill events. All
27   but one of the discharge events described in Table A occurred after July 13, 2015.
28   Yet, based on its reports of spill events, USIBWC admitted that it failed to implement

Complaint For Declaratory and Injunctive Relief

1  its Prevention/Response Plan for any of the discharges in Table A, as it did not
2  recover or clean up a single gallon of waste discharged.

3      55. The San Diego Water Board attempted to resolve these violations with
4  USIBWC informally through a workshop held on December 12, 2017.  The San
5  Diego Water Board provided USIBWC a list of priority action items derived from
6  that workshop that relate to the operation of the canyon collectors and updates to the
7  Facilities, but, in a March 1, 2018 letter, USIBWC refused to implement any of the
8  proposed action items.  Due to the ongoing management, operational and structural
9  deficiencies at the Facilities, these violations will likely continue.

10                      **FIRST CLAIM FOR RELIEF**
11          (Violation of Section 301 of the Clean Water Act; 33 U.S.C. § 1311.)

12      56.   The San Diego Water Board re-alleges and incorporates herein by this
13  reference the preceding paragraphs of this Complaint.

14      57.   The Tijuana River, Tijuana River Estuary, and Pacific Ocean are waters
15  of the United States as defined by Clean Water Act section 502(7), 33 U.S.C.
16  §1362(7) and 40 C.F.R. §122.2.

17      58.   USIBWC owns, operates, controls and/or maintains the Facilities,
18  including the five canyon collectors along the United States-Mexico border.

19      59.   On information and belief, USIBWC constructed and designed the
20  canyon collectors in order to direct dry-weather flows from Mexico toward the
21  canyon collectors, capture these flows, and divert them to the Plant for treatment.

22      60.   The canyon collectors are "point sources" within the meaning of the
23  Clean Water Act. 33 U.S.C. § 1362(14).

24      61.   On at least eleven separate occasions, USIBWC's acts or omissions
25  relating to its operation and maintenance of the canyon collectors resulted in the
26  addition of waste—including sewage, pesticides, heavy metals, and bacteria—into
27  the Tijuana River, Tijuana River Estuary and/or Pacific Ocean. This waste contained
28  numerous pollutants as defined by the Clean Water Act. 33 U.S.C. § 1362(6).

20

1        62.    Specifically, on information and belief, by failing to properly maintain

2    the canyon collector inlets and berms, waste that was captured by the canyon

3    collectors and should have been diverted into the inlet and then to the Plant, instead

4    discharged to waters of the United States.

5        63.    These spill events thereby constitute discharges of pollutants (33 U.S.C.

6    § 1362(12)), from a point source to waters of the state and United States.

7        64.    As reported by USIBWC, these twelve spill events occurred during dry

8    weather, and therefore were not caused by rain.

9        65.    USIBWC did not and does not possess a NPDES permit that allows for

10    the discharge of pollutants from the canyon collectors during dry weather.

11        66.    Based on the frequency of spill events from the Facilities, USIBWC's

12    repeated failure to properly maintain the inlets and berms at its canyon collectors,

13    and these discharges from the canyon collectors will likely continue.

14        67.    Each day USIBWC discharged waste from its canyon collectors and into

15    waters of the United States without a permit constituted an independent violation of

16    Section 301, 33 U.S.C. §1311.

17        68.    USIBWC also owns, controls and/or maintains the Goat Canyon pump

18    station.

19        69.    The Goat Canyon pump station is a point source within the meaning of

20    the Clean Water Act. 33 U.S.C. § 1362(14).

21        70.    On February 27, 2018, as a result of USIBWC's acts or omissions, over

22    fifty thousand gallons of waste from USIBWC's Goat Canyon pump station was

23    released into the Tijuana River, Tijuana River Estuary, and/or the Pacific Ocean.

24        71.    On information and belief, the waste contained several pollutants, as

25    defined under the Clean Water Act, including sewage, garbage, and chemical,

26    industrial, and municipal wastes. 33 U.S.C. § 1362(6).

27        72.    The release of waste from Goat Canyon constitutes a discharge of

28    pollutants (33 U.S.C. § 1362(12)), from a point source and into waters of the state

1  and United States.

2      73.    There is a reasonable likelihood that the discharge of waste from the
3  Goat Canyon pump station could re-occur given the other repeated discharges caused
4  by USIBWC's failure to properly operate and maintain its Facilities.

5      74.    USIBWC did not obtain a NPDES permit to discharge waste into waters
6  of the United States from the Goat Canyon pump station.

7      75.    The unpermitted discharge of waste from USIBWC's pump station and
8  into waters of the United States constitutes a separate violation of Section 301, 33
9  U.S.C. § 1311.

10      **SECOND CLAIM FOR RELIEF**

11      (Violation of Section 402 of the Clean Water Act; 33 U.S.C. § 1342.)

12      76.    The San Diego Water Board re-alleges and incorporates herein by this
13  reference the preceding paragraphs of this Complaint.

14      77.    Specifically, the San Diego Water Board alleges that USIBWC
15  repeatedly violated numerous obligations under its NPDES Permit.

16      78.    USIBWC repeatedly violated the discharge prohibitions in Section III
17  of the NPDES Permit.

18      a)    Section III permits the discharge of waste only from the South
19  Bay Ocean Outfall. It prohibits all other discharges.

20      b)    In eleven instances, described in Table A above, USIBWC
21  reported that dry-weather, transboundary flows were captured by the canyon
22  collectors, but not diverted to the Plant. Instead, on information and belief, due to
23  USIBWC's acts and/or omissions, these flows overran the canyon collectors and
24  discharged to state lands and waters of the United States.

25      c)    In addition, through USIBWC's acts and/or omissions, and on
26  information and belief, USIBWC failed to properly maintain the Goat Canyon pump
27  station and, as a result, over fifty thousand gallons of waste was discharged from the
28  Goat Canyon pump station and onto state lands and waters of the United States.

1                d)    Each of these discharge events are detailed in Table A, and none

2 resulted in discharges at the South Bay Ocean Outfall, as required by Section III of

3 the NPDES Permit.

4                e)    This waste contained pollutants as defined by the Clean Water

5 Act.

6                f)    Accordingly, all twelve discharges described in Table A resulted

7 in separate violations of USIBWC's NPDES Permit's discharge prohibitions, and

8 each constitute independent violations of Section 402, 33 U.S.C. § 1342.

9                g)    USIBWC's discharge of waste through its canyon collectors and

10 the Goat Canyon pump station into waters of the United States date back to 2015 and

11 continued through 2018.  On information and belief, throughout this time USIBWC

12 failed to properly operate and maintain these facilities or to ensure similar discharges

13 could be prevented in the future.  Accordingly, there is a reasonable likelihood that

14 these discharges will continue until USIBWC fully complies with its NPDES Permit

15 obligations.

16                h)    Each of these discharges further violated the San Diego Basin

17 Plan water quality requirements incorporated into the NPDES Permit.    On

18 information and belief, through its acts or omissions, each of USIBWC's discharges

19 of waste described above adversely impaired the water quality of the Tijuana River,

20 Tijuana River Estuary, and the Pacific Ocean and posed serious public health threats

21 to the surrounding community.

22                i)    The impaired water quality thereby impacted the beneficial uses

23 of the waters of state and the United States and impaired the enjoyment of the same.

24                j)    These discharges therefore caused or threatened to cause a

25 condition of pollution, contamination, or nuisance, as defined in California Water

26 Code § 13050 (k), (l), (m), in a separate violation of the NPDES Permit's discharge

27 prohibition requirements.

28        79.    USIBWC also violated its monitoring and reporting obligations set forth

Complaint For Declaratory and Injunctive Relief

1  in Section VI. B and Attachment E of the NPDES Permit.

2      a)    For all Type A discharges, USIBWC was required to monitor the
3  waste discharged, test each sample for certain parameters and report those findings
4  to the San Diego Water Board.

5      b)    USIBWC failed to monitor any of the eleven Type A discharges
6  at-issue in this Complaint.  On three separate occasions—March 1, 2017, May 24,
7  2017, and April 30, 2017—USIBWC utterly failed to monitor and report
8  transboundary flows released from canyon collectors during dry weather conditions.

9      c)    In addition, for the remaining eight discharge events—on January
10  29, September 5, and November 29, 2016 and March 1, April 24, April 30, May 21,
11  May 24, June 27, October 6, and October 19, 2017—USIBWC failed to adequately
12  test or report wastewater testing samples for all the required parameters of waste
13  discharged at the canyon collectors.

14      d)    Each instance that USIBWC failed to monitor and report a
15  transboundary flow constitutes an independent violation of the NPDES Permit and
16  therefore Section 402, 33 U.S.C. § 1342.

17      e)    Due to USIBWC's repeated failure to adequately monitor and/or
18  report transboundary flows, there is a reasonable likelihood that USIBWC will
19  continue to violate this NPDES Permit requirement for future spills.

20      80.    Further, USIBWC violated Section VI.C.2 of the NPDES Permit
21  because it failed to implement the Prevention/Response Plan to recover waste
22  discharged from its canyon collectors during dry-weather spill events and from its
23  pump stations.

24      a)    USIBWC was required to implement its Prevention/Response
25  Plan on July 13, 2015.

26      b)    The Prevention/Response Plan required USIBWC to recover
27  wastewater discharged by its Facilities.

28      c)    Eleven of the discharges described in Table A occurred after July

Complaint For Declaratory and Injunctive Relief

1    13, 2015.

2           d)   On information and belief, USIBWC did not implement its
3    Prevention/Response Plan for any of these spill events.  Specifically, USIBWC failed
4    to take any of the measures identified in its Prevention/Response Plan regarding
5    containment or cleanup, nor did USIBWC recover a single gallon of waste from these
6    spill events.

7           e)   Each   instance   where   USIBWC   failed   to   implement   its
8    Prevention/Response Plan is a violation of the NPDES Permit.  Each violation of
9    USIBWC's NPDES Permit constitutes an independent violation of Section 402, 33
10   U.S.C. § 1342.  Based on USIBWC's failure to implement its Prevention/Response
11   Plan for a single spill event, these violations will likely continue in the future.

12        81.   On information and belief, the discharge events from the canyon
13   collectors and Goat Canyon pump station contributed to violations of the NPDES
14   Permit receiving water limitations established in Section V and Attachment E of the
15   permit.

16          a)   The wastewater sampled by USIBWC during discharge events at
17   the canyon collectors was tested for the presence and concentration of specific
18   bacteria and other chemicals.   The results from this testing revealed elevated
19   concentrations of enterococcus and fecal coliform bacteria.

20          b)   On information and belief, these same discharges entered the
21   Tijuana River, Tijuana River Estuary, and ultimately the Pacific Ocean.

22          c)   Testing of samples taken at monitoring stations within the Pacific
23   Ocean revealed violations of receiving water limitations, established by the NPDES
24   Permit, for enterococcus on June 27, 2017, and bacteria during the months of January
25   2016, September 2016, March through June 2017, and October 2017.

26          d)   On information and belief, the discharge events described above
27   caused or contributed to these exceedances of the receiving water limitations.

28          e)   Each exceedance of a receiving water limitation constitutes an

Complaint For Declaratory and Injunctive Relief

1  independent violation of the NPDES Permit and therefore Section 402, 33 U.S.C. §
2  1342.

3                              **PRAYER FOR RELIEF**

4      WHEREFORE, the San Diego Water Board requests this Court to enter a
5  judgment:

6      1.   Declaring that USIBWC's eleven discharges of waste from its canyon
7  collectors constitute violations of Clean Water Act sections 301 and/or 402.

8      2.   Declaring that USIBWC's discharge of waste from its Goat Canyon pump
9  station constitutes a violation of Clean Water Act sections 301 and/or 402.

10     3.   Declaring that USIBWC violated the terms of its NPDES Permit by:

11         a. Causing   or   threatening   to   cause   a   condition   of   pollution,
12  contamination, or nuisance through its discharges of waste into waters of the United
13  States;

14         b. Failing to collect samples and monitor for all required parameters for
15  all eleven Type A discharges from its canyon collectors identified in Table A.

16         c. Failing to implement its Prevention/Response Plan to prevent and
17  recover waste from any of the discharge events that occurred at the canyon collectors
18  or the Goat Canyon pump station.

19         d. Exceeding receiving water limitations imposed by the NPDES Permit
20  for enterococcus and fecal coliform bacteria.

21     4.   Declaring that each of the NPDES Permit violations, cited above, are
22  ongoing.

23     5.   Ordering USIBWC to take all actions necessary to comply with the Clean
24  Water Act and the NPDES Permit, including properly operating and maintaining its
25  Facilities to avoid any flows past its existing canyon collectors, properly maintaining
26  its Facilities to avoid any future pump station or other Facility failures, properly
27  implement the monitoring program in the NPDES Permit and creating and
28  implementing a response plan as stated in the NPDES Permit.

1    6.   Awarding the San Diego Water Board its costs of litigation, including

2    reasonable attorneys' fees, incurred in prosecuting this action, pursuant to 28 U.S.C.

3    § 2412, and Clean Water Act section 505(d), 33 U.S.C. § 1365(d) and all applicable

4    law.

5    7.   All other relief deemed appropriate by this Court.

6

7    Dated:  September 4, 2018                            Respectfully Submitted,

8                                                          XAVIER BECERRA
                                                           Attorney General of California
9                                                          MICHAEL P. CAYABAN
                                                           Supervising Deputy Attorney General
10

11

12                                                         PHILLIP M. HOOS
                                                           NOAH GOLDEN-KRASNER
13                                                         Deputy Attorneys General
                                                           *Attorneys for Plaintiff*
14

15   SD2018100951
     82053192.DOCX
16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint For Declaratory and Injunctive Relief