# EXHIBIT 1

 

## San Diego Regional Water Quality Control Board

May 14, 2018

Acting Commissioner Jose Nuñez  
United States Commissioner  
International Boundary and Water Commission  
United States Section  
4171 North Mesa, Suite C-100  
El Paso, Texas 79902-1441  

VIA CERTIFIED MAIL  
RETURN RECEIPT REQUESTED  
No. 7015 0640 0006 1569 9708  

Scott Pruitt  
Administrator  
United States Environmental Protection Agency  
William Jefferson Clinton Building  
1200 Pennsylvania Avenue, N.W.  
Washington, D.C. 20460  

VIA CERTIFIED MAIL  
RETURN RECEIPT REQUESTED  
No. 7015 0640 0006 1569 9692  

**SUBJECT:** 60-Day Notice of Intent to Sue for Violations of the Federal Water Pollution Control Act by the United States Section of the International Boundary and Water Commission; CW760862:cclemente

Dear Acting Commissioner Nuñez:

The People of the State of California (the People), by and through the California Regional Water Quality Control Board, San Diego Region (San Diego Water Board), an agency responsible for protecting and preserving United States and California waters, and California Attorney General Xavier Becerra, chief law enforcement officer for the State of California, hereby provide this notice of intent to sue the United States Section of the International Boundary and Water Commission (USIBWC). The People provide this notice pursuant to sections 505(a)(1) and 505(b)(1) of the Federal Water Pollution Control Act (hereafter referred to as the Clean Water Act or CWA), 33 U.S.C. § 1365(a)(1) and (b)(1) and its implementing regulations, 40 C.F.R. Part 135, Subpart A.

The San Diego Water Board is an agency of the State of California that is geographically comprised of all basins draining into the Pacific Ocean between the southern boundary of the Santa Ana region and the California-Mexico boundary. (Cal. Water Code § 13200.) It is one of nine such regional water quality control boards established by the Legislature, vested with specific powers and duties and authorized to, among other things, administer and implement the Clean Water Act in California, including the authority to issue National Pollutant Discharge Elimination System (NPDES) permits and to enforce the Clean Water Act through the California Porter-Cologne Water Quality Act (Porter-Cologne). (Cal. Water Code § 179, §§ 13000 et seq., 13370, 13372, 13376, 13377, 13385.) The health, safety, and welfare of the People of the State of California require that the state, through the nine Regional Water Quality Control Boards and the State Water Resources Control Board (collectively referred to as Water Boards), exercise its full power and jurisdiction to protect the quality of waters in the state from degradation originating inside or outside the boundaries of the state. (Cal. Water Code § 13000.)



The San Diego Water Board is a "citizen" within the meaning of 33 U.S.C. § 1365(g), because its core functions of protecting the health, safety, and welfare of California residents, protecting the waters of California and the United States from pollution and contamination, and protecting the designated beneficial uses of such waters, have been adversely affected by the USIBWC's discharges of pollutants to waters of California and the United States in violation of the Clean Water Act, as described below.  The People, by and through the San Diego Water Board and the Attorney General, are therefore entitled to commence a civil action against the USIBWC pursuant to 33 U.S.C. § 1365(a) subsequent to this 60-day notice.

## BACKGROUND INFORMATION

The Clean Water Act and Porter-Cologne prohibit the point source discharge of pollutants to waters of the United States except as authorized by 33 U.S.C. § 1342.  (Clean Water Act, § 301, 33 U.S.C. § 1311, Cal. Water Code § 13376.)  Under this section, the United States Environmental Protection Agency also approved the State of California's plan to issue permits, implement, and enforce the provisions of the NPDES program to the State of California and Water Boards as authorized by chapter 5.5 of the California Water Code.  (Clean Water Act, § 402, 33 U.S.C. § 1342(b), Cal. Water Code § 13370 et seq.)

The Tijuana River watershed straddles the international border between the United States and Mexico.  The Tijuana River flows north through highly urbanized areas in Mexico before entering into the Tijuana Estuary and the Pacific Ocean through San Diego County in the United States. The Tijuana River Estuary is the largest functioning wetland in southern California, providing habitat for at least six endangered species and many threatened species of wildlife and vegetation.  It is an exceptionally rich and invaluable natural resource designated by the International Ramsar Convention as wetlands of international importance.  The lower six miles of the Tijuana River and the Tijuana River Estuary (collectively referred to as the Tijuana River Valley) are listed as impaired water bodies (referred to as "303(d) listed water bodies") pursuant 33 U.S.C. § 1313 (Clean Water Act, § 303(d)) due to excessive levels of bacteria, heavy metals, trash, and sediment among other pollutants.  As a result of the presence of these pollutants, water quality objectives are not attained in the Tijuana River Valley and numerous designated beneficial uses are impaired; most importantly, those associated with protection of aquatic life (e.g., warm freshwater, estuarine, marine habitat, and rare and endangered species) and protection of human health (e.g., contact and non-contact water recreation, fishing, and shellfishing).

Pursuant to a 1944 Treaty entered into by the United States and Mexico—entitled *Utilization of Waters of the Colorado River and Tijuana Rivers and of the Rio Grande*—the International Boundary and Water Commission (IBWC) was created and authorized to work to address and resolve water quality issues, among other issues, at border and transborder rivers and streams. The IBWC consists of two sections—the United States Section and the Mexico Section.  The two sections are tasked with negotiating and implementing resolutions to address the water qualities issues covered by the 1944 Treaty.  Each section has exclusive jurisdiction and control on its respective side of the border over works constructed, acquired, or used in fulfillment of its obligations under the 1944 Treaty.

## IBWC Minute 283 and the NPDES Permit

Pursuant to the 1944 Treaty, the U.S. and Mexico Sections can amend the treaty by issuing Minutes, which must be approved by both countries.  IBWC Minute 283 titled *Conceptual Plan*

*for the International Solution to the Border Sanitation Problem in San Diego, California/Tijuana, Baja California*, approved on July 2, 1990 by both governments, provided the framework for designing, constructing, and operating an international sewage collection system and secondary treatment plant to attempt to mitigate the significant threat to beneficial uses caused by uncontrolled and untreated discharges of waste across the border. Minute 283 laid the foundation for the construction and operation of the South Bay International Wastewater Treatment Plant (SBIWTP), a secondary treatment sewage plant owned by the USIBWC, the construction of a pump station and diversion structure in the main channel of the Tijuana River to divert dry weather flows to SBIWTP, and initiating concrete actions to address the uncontrolled sewage that continuously flows from Mexico to the United States at Goat Canyon and the Tijuana River, among other border locations.

The San Diego Water Board's early regulation of the SBIWTP in 1996 through Order No. 96-50 after the facility's initial construction was the Board's first border-related priority to address significant cross-border flows of untreated sewage and associated water quality and public health risks posed by the above-mentioned pollutants.  On June 26, 2014, the San Diego Water Board adopted Order No. R9-2014-0009 (as amended by Order No. R9-2014-0094) ("NPDES permit") which serves as the updated waste discharge requirements and NPDES permit for the USIBWC's discharges of secondary treated wastewater from the SBIWTP to the Pacific Ocean via the South Bay Ocean Outfall.  The NPDES permit defines "facilities" as the SBIWTP, five canyon collectors, two pump stations [Goat Canyon and Hollister pump stations], the South Bay Land Outfall, the South Bay Ocean Outfall, and other associated infrastructure. (*Id.*, Attachment A, p. A-6.)

Canyon collectors are concrete channels and basins designed to capture transboundary dry weather flows from Mexico in canyons and ravines draining north across the border to the Tijuana River.  The five canyon collector systems (i.e. Smugglers Gulch Diversion Structure, Goat Canyon Diversion Structure, Canyon del Sol Collector, Stewart's Drain Canyon Collector, and Silva Drain Canyon Collector) are considered part of the wastewater system that is owned and operated by the USIBWC and regulated by the NPDES permit. (Clean Water Act, § 212, 33 U.S.C. § 1292(2)(A).)

Each canyon collector system includes a detention basin designed to capture dry weather flows, a screened drain/inlet, and a gravity conveyance to the SBIWTP, or pump stations. When flows do not exceed the maximum design capacity of the canyon collectors and the canyon collectors are properly operated and maintained, captured, dry weather flows from these collectors are diverted to the SBIWTP for treatment and disposal through the South Bay Ocean Outfall.  The maximum design capacity for each canyon collector system is as follows: Stewart's Drain: 1.67 million gallons per day (MGD), Silva Drain: 0.33 MGD, Canyon del Sol: 0.67 MGD, Smugglers Gulch: 4.67 MGD, Goat Canyon: 2.33 MGD.  Any quantity of flow in the canyons exceeding the maximum design capacity of the canyon collectors overflows the respective structure and continues flowing north, discharging to the Tijuana River, the Tijuana River Estuary, and the Pacific Ocean at south San Diego County beaches.  Failure to properly operate and maintain these canyon collectors also leads to similar overflows. The Tijuana River, the Estuary, and the Pacific Ocean are all waters of the State of California and the United States.

The NPDES permit carries over the Discharge Prohibitions from Order No. 96-50.  The NPDES permit prohibits "the discharge of waste from the Facilities to a location other than Discharge Point No. 001 [South Bay Ocean Outfall], unless specifically regulated by this Order or separate WDRs."  (Order No. R9-2014-0009, Provision III.A., p. 4.)  The NPDES permit incorporates provisions contained in chapter 4 of the Water Quality Control Plan for the San Diego Basin

(Basin Plan) and Attachment G of the permit as if fully set forth in Section III. as specific conditions of the permit. (Order No. R9-2014-0009, Provision III.C., p. 4.) The Basin Plan specifies certain conditions or areas where the discharge of waste, or certain types of waste, will not be permitted. (Cal. Water Code, § 13243.) The NPDES permit requires the USIBWC to comply with receiving water limitations for ocean waters. The discharge of waste shall not cause or contribute to a violation of receiving water limitations in the Pacific Ocean. (Order No. R9-2014-0009, Provision V.A., pp. 11-12.)

**THE CURRENT VIOLATIONS**

This matter involves the discharge of waste[1], including but not limited to sewage, trash, sediment, and industrial waste from facilities owned by the USIBWC in violation of its NPDES permit[2]; the discharge of waste causing or contributing to a violation of receiving water limitations in Provision V.A.; the USIBWC's failure to comply with Special Provisions in Provision VI.C.2.; and the USIBWC's failure to comply with reporting requirements as required by Provision VII. of the NPDES permit Monitoring and Reporting Program (MRP).

   A. <u>Transboundary discharges of waste from the canyon collectors in violation of Order No. R9-2014-0009 and Clean Water Act sections 301 and 402 ("Canyon Collector Spills")</u>

The NPDES permit defines a "Flow Event Type A" as dry weather transboundary wastewater or other flow events from the five canyon collector facilities where flows are not diverted from the canyon collector systems to the SBIWTP for secondary treatment. (Order No. R9-2014-0009, Section VI.C.2.a., p. 18.) As mentioned above, when flows in the canyons exceed the maximum design capacity of the canyon collectors or the canyon collectors are not properly operated or maintained, overflows from the USIBWC's structures continue north, discharging to waters of the United States. The USIBWC must report Flow Event Type A occurrences pursuant to Section VI.C.2.d. of the NPDES permit and Section VII.B. of the MRP within three business days (preliminary report) and 15 calendar days (certified report). The USIBWC self-reported the following Flow Event Type A occurrences[3] from April 19, 2015 to October 19, 2017:

**Table A: Flow Event Type A**

| Start Date | End Date | Volume (Gallons) ~ 11.86 MG total | Type A | Link to Spill Report | Location |
|---|---|---|---|---|---|
| 4/19/2015 | 4/19/2015 | 2,000 | A | None | Canyon del Sol Collector |
| 1/28/2016 | 1/28/2016 | 2,238 | A | [Spill Report](#) | Stewart's Drain Canyon Collector |
| 9/5/2016 | 9/5/2016 | 390 | A | [Spill Report](#) | Canyon del Sol Collector |

---

[1] The terms "pollutant" as defined by Clean Water Act § 502(6) and "waste" as defined by California Water Code § 13050(d) are used interchangeably throughout.

[2] The discharge events described in more detail in each subsection herein may constitute multiple violations of the Discharge Prohibitions listed in Section III. of the NPDES permit, including but not limited to multiple violations of discrete Discharge Prohibitions in the San Diego Water Board's Basin Plan.

[3] The San Diego Water Board contends that the USIBWC misclassified the flow events occurring on November 29, 2016, March 1, 2017, and April 30, 2017 as Type B rather than Type A. Based on the description of these events provided by the USIBWC, it should have categorized these events as Flow Event Type A based on the definition in the NPDES permit.

| | | | | | |
|---|---|---|---|---|---|
| 11/29/2016 | 11/29/2016 | 200,000 | A | [Spill Report] | Goat Canyon at the International Border |
| 3/1/2017 | 3/1/2017 | 145,000 | A | [Spill Report] | Goat Canyon at the International Border |
| 4/24/2017 | 4/24/2017 | 12,850 | A | [Spill Report] | Stewart's Drain Canyon Collector |
| 4/30/2017 | 5/1/2017 | 645,000 | A | [Spill Report] | Goat Canyon at the International Border |
| 5/21/2017 | 5/21/2017 | 1,560 | A | [Spill Report] | Stewart's Drain Canyon Collector |
| 5/24/2017 | 5/24/2017 | 3,800 | A | [Spill Report] | Stewart's Drain Canyon Collector |
| 6/27/2017 | 6/27/2017 | 5,500,000 | A | [Spill Report] | Canyon del Sol Collector |
| 10/6/2017 | 10/7/2017 | 4,152,000 | A | [Spill Report] | Canyon del Sol Collector |
| 10/19/2017 | 10/19/2017 | 1,207,000 | A | [Spill Report] | Canyon del Sol Collector |

The People allege that the canyon collector Flow Event Type A occurrences listed above on the specified dates constitute separate violations of Discharge Prohibition III.A. of the NPDES permit and Clean Water Act § 402 as each event resulted in a prohibited discharge of waste from the USIBWC's facilities other than at the authorized discharge location, Discharge Point No. 001. Discharges of waste from these Flow Event Type A occurrences reaching the Tijuana River, Tijuana River Estuary, and/or the Pacific Ocean are separate violations of Clean Water Act § 301 and California Water Code § 13376. In addition, the San Diego Water Board alleges that, at the very least, the canyon collector Flow Event Type A occurrences listed above in Table A violate Discharge Prohibition III.C. of the NPDES permit and Clean Water Act § 402 as prohibited discharges of waste to land pursuant to Basin Plan Prohibition II.2. in Attachment G of the NPDES permit if those discharges of waste from the canyon collectors went to land and were not otherwise authorized by the San Diego Water Board pursuant to California Water Code § 13264.

B. <u>Discharges of waste in a manner causing or threatening to cause a condition of pollution, contamination, or nuisance in violation of Order No. R9-2014-0009, as amended ("Pollution, Contamination, or Nuisance Spills")</u>

As stated previously, the NPDES permit incorporates the San Diego Water Board Basin Plan into the terms of the permit as required conditions of compliance. These prohibitions are necessary in order to achieve water quality objectives and maintain designated beneficial uses. Basin Plan Prohibition II.1. prohibits the discharge of waste to waters of the State in a manner causing, or threatening to cause, a condition of pollution, contamination, or nuisance as defined in Water Code § 13050. (Order No. R9-2014-0009, Attachment G, Provision II.1., p. G-1.)

"Pollution" means an alteration of the quality of the waters of the state by waste to a degree which unreasonably affects either; the waters for beneficial uses or facilities which serve these beneficial uses. (Cal. Water Code § 13050(l).) Pollution may include "contamination" defined as an impairment of the quality of the waters of the state by waste to a degree which creates a hazard to public health though poisoning or through the spread of disease. Contamination also includes any equivalent effect resulting from the disposal of waste, whether or not waters of the state are affected. (Cal. Water Code § 13050(k).) "Nuisance" means anything which meets all

of the following requirements; is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property; affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal; and occurs during, or as a result of, the treatment or disposal of wastes.  (Cal. Water Code § 13050(m).)

If transboundary flows pass the USIBWC's canyon collector system, the NPDES permit requires the USIBWC to monitor the flow for the parameters described in Table E-10 of the MRP.  (Order No. R9-2014-0009, Attachment E, Provision VII.B.3, pp. E-34 – E-36.)  The San Diego Water Board selected the pollutant parameters in Table E-10 based on the pollutants' threat to contact water recreation (referred to as REC-1) and other designated beneficial uses.  Moreover, the pollutant parameters in Table E-10 of the MRP are the parameters causing impairment to 303(d) listed water bodies, the Tijuana River and Estuary.  The monthly reports for the corresponding Flow Event Type A occurrences listed above in Table A[4] contain the USIBWC's self-reported sampling results of the wastewater bypassing the canyon collectors.

Based on these sample results, the People contend that the USIBWC's discharges of waste to waters of the State and United States on each of the dates listed in Table A where it collected samples unreasonably affected the designated beneficial uses of the Tijuana River, Tijuana River Estuary, and the Pacific Ocean and further impaired the quality of these waters to a degree which creates a hazard to public health.  Furthermore, the USIBWC's creation of this public health hazard resulted in a number of beach closures at Border Field State Park (extending north from the international border to Monument Road) and the Tijuana River Slough during corresponding time periods of these Flow Event Type A occurrences resulting in the creation of a nuisance.  Based on the foregoing, the People allege that the USIBWC's discharges of waste to waters of the State and United States occurring on the dates reflected in Table A violate Basin Plan Prohibition II.1. and Discharge Prohibition III.C. of the NPDES permit resulting in separate violations of Clean Water Act § 402.

C. <u>Failure to comply with monitoring requirements for Transboundary Flow events in violation of Order No. R9-2014-0009, as amended ("Monitoring Violations")</u>

The NPDES permit requires the USIBWC to monitor the flow where transboundary flows pass the canyon collector system (i.e. Flow Event Type A).  Monitoring of dry weather transboundary flows that pass through the canyon collectors without diversion to the SBIWTP for treatment is necessary for a number of reasons described in the MRP, significantly to determine whether designated beneficial uses in the Tijuana River and Estuary are being affected and to provide warnings of possible public health hazards from contact and non-contact recreation.  (Order No. R9-2014-0009, Attachment E, Provision VII.B., p. E-33.)

The People allege that, on at least three occasions where transboundary flows bypassed the canyon collector systems on November 29, 2016, March 1, 2017, and April 30, 2017, the USIBWC violated MRP Provision VII.B. by failing to collect the required samples and to monitor for the specific parameters listed in Table E-10 of the MRP.  These failures constitute separate violations of Clean Water Act § 402 and California Water Code § 13383.

---

[4] With the exception of November 29, 2016, April 30, 2017, May 21 and 24, 2017 where the USIBWC failed to monitor and collect samples for these Flow Event Type A occurrences.

D. <u>Discharges of waste from other USIBWC facilities to waters of the United States in violation of Order No. R9-2014-0009, as amended ("Goat Canyon Pump Station Failure Spill")</u>

The NPDES permit defines "Facilities Spill Event" as a discharge of treated or untreated wastewater or other material to the environment that occurs from the USIBWC's facilities as defined above. (Order No. R9-2014-0009, Section VI.C.2.a.i.a., p. 17.) The Goat Canyon pump station is a "facility" within the meaning of the NPDES permit.

On February 27, 2018, a spill of approximately 54,000 gallons of waste, including untreated sewage, occurred at the Goat Canyon pump station discharging to the Tijuana River. The USIBWC reported that the cause of the spill was a temporary power outage that placed the Programmable Logic Control in standby mode resulting in the loss of level control for the pump station. With the pump disabled, the lift station wet well filled and overflowed to the Tijuana River.

The People allege that this facility spill event on February 27, 2018 violates Discharge Prohibition III.A. of the NPDES permit and Clean Water Act § 402 as this facility spill event constitutes a prohibited discharge of waste from a facility other than the authorized discharge location, Discharge Point 001. Discharges of waste from this Facility Spill Event reaching the Tijuana River, Estuary, and/or the Pacific Ocean are violations of Clean Water Act § 301 and California Water Code § 13376.

E. <u>Discharges of waste causing or contributing to a violation of receiving water limitations in the Pacific Ocean in violation of Order No. R9-2014-0009, as amended ("Receiving Water Limit Exceedances")</u>

The NPDES permit establishes receiving water limitations based on water quality objectives contained in the Basin Plan and Ocean Plan and states "the discharge of waste shall not cause or contribute to violation of these limitations in the Pacific Ocean." (Order No. R9-2014-0009, Section V.A.1., p. 11.) Specific receiving water limitations are listed below:

> **30-day Geometric Mean:** Based on the geometric mean of the five most recent samples from each site.
> (1) Total coliform density shall not exceed 1,000 CFU/100 mL;
> (2) Fecal coliform density shall not exceed 200 CFU/100 mL;
> (3) Enterococcus density shall not exceed 35 CFU/100 mL.
> **Single Sample Maximums:**
> (1) Total coliform density shall not exceed 10,000 CFU/100 mL;
> (2) Fecal coliform density shall not exceed 400 CFU/100 mL;
> (3) Enterococcus density shall not exceed 104 CFU/100 mL;
> (4) Total coliform density shall not exceed 1,000 CFU/100 mL when the fecal coliform/total coliform ratio exceeds 0.1.

The NPDES permit MRP requires the USIBWC to conduct shoreline water quality monitoring at designated monitoring stations in the Pacific Ocean on a weekly basis (see Order No. R9-2014-0009, Attachment B – Map of Surf Zone, Offshore, Trawl, and Rig Fishing Stations.). The USIBWC submits receiving water monitoring reports to the San Diego Water Board on a monthly basis with the submission of its Monthly Report. Based on self-reported receiving water data, the People allege that on at least one occasion, June 27, 2017, the Flow Event Type A occurrence from the USIBWC's facility at Canyon del Sol caused or contributed to an

exceedance of the single sample maximum standard for enterococcus at receiving water monitoring station, S-5 located at the Tijuana River Slough.  The USIBWC also self-reported exceedances of receiving water limitations for bacteria during the months of July 2015, January 2016, September 2016, November 2016, March through June 2017, and October 2017 when Flow Event Type A occurrences took place.  These exceedances of receiving water limitations are separate violations of Clean Water Act § 402.

- F. <u>Failure to implement the Spill and Transboundary Wastewater Flow Event Prevention and Response Plan ("Failure to Implement Spill Response and Mitigate")</u>

The NPDES permit Provision VI.C.2.a.ii.h. requires the USIBWC to develop measures to contain and clean up facilities spill events and Flow Event Type A occurrences.  Specifically, a spill prevention and response plan shall "describe guidelines and procedures for taking all feasible and necessary remedial actions to 1) control or limit the spill and/or transboundary wastewater flow volume, 2) terminate the spill and/or transboundary wastewater flow, and 3) recover as much of the spill and/or transboundary wastewater flow volume as possible for proper disposal, including any wash down water."  The NPDES permit Provision VI.C.2.a.iii. describes the process for public review of the spill prevention and response plan and requires the USIBWC to immediately commence implementation of the plan once a revised plan, based on public comments, is submitted to the San Diego Water Board.  The USIBWC submitted a draft of the *Spill and Transboundary Wastewater Flow Event and Prevention and Response Plan* (Spill Prevention and Response Plan), prepared by its contractor Veolia Water Operating Services, on December 22, 2014.  Subsequent to the public review process, the USIBWC submitted its revised Spill Prevention and Response Plan to the San Diego Water Board on July 13, 2015.  Implementation of the Spill Prevention and Response Plan should have commenced prospectively from that date.

The USIBWC's Spill Prevention and Response Plan states, that for Flow Event Type A occurrences, the USIBWC (or Veolia, as requested) is identified as the "responsible party."  Once the overflow has been stopped, the responsible party must develop an appropriate cleanup strategy to include the personnel assignments, equipment needed to complete the cleanup, and appropriate disposal of collected material (wastewater, trash, debris, sand, etc.).  The Spill Prevention and Response Plan also outlines specific containment and cleanup measures that must be implemented for Flow Event Type A occurrences.  These measures include collection of solid, liquid, and other debris; removal of waste by vacuum truck; and cleanup of impacted storm drains.

The USIBWC's Monthly Reports for each of the Flow Event Type A occurrences listed in Table A occurring after the July 13, 2015 revised Spill Prevention and Response Plan each indicate that the USIBWC recovered zero gallons of waste discharged past the canyon collector systems.  Nothing in the USIBWC's Monthly Reports for these discharge events indicates that the USIBWC implemented any of the containment or cleanup measures required by the NPDES Permit.  The People allege that these failures to implement the Spill and Transboundary Response Plan are separate violations of Clean Water Act § 402 and California Water Code § 13383.

The People are represented by counsel from the California Department of Justice, Deputy Attorneys General Noah Golden-Krasner and Phillip Hoos.  Contact information for counsel is provided below:

Acting Commissioner Jose Nuñez - 9 - May 14, 2018
60-Day Notice Letter

>Noah Golden-Krasner
>Deputy Attorney General
>California Department of Justice
>300 South Spring Street, Suite 1702
>Los Angeles, California 90013
>(213) 269-6343
>Noah.GoldenKrasner@doj.ca.gov
>
>Phillip M. Hoos
>Deputy Attorney General
>California Department of Justice
>600 West Broadway, Suite 1800
>San Diego, California 92101
>(619) 738-9301
>PhillipM.Hoos@doj.ca.gov

Please direct all correspondence related to this 60-day notice to counsel listed above.

During the 60-day notice period commencing with this letter, the People are prepared to further discuss effective remedies for these violations and other transboundary issues, as previously discussed in our January 26, 2018 document *Priority Projects for Addressing Cross-border Pollution*, as well as compliance with sections 301 and 402 of the Clean Water Act going forward.

If satisfactory resolution of this matter is not forthcoming, the People intend to sue the USIBWC in the United States District Court. Among other relief, the People will seek a court order directing the USIBWC to henceforth comply with its NPDES permit and sections 301 and 402 of the Clean Water Act and sections 13376 and 13383 of the California Water Code.

Sincerely,

*[signature: David W. Gibson]*

David Gibson
Executive Officer
California Regional Water Quality Control Board, San Diego Region

cc: See mailing list

Acting Commissioner Jose Nuñez      - 10 -      May 14, 2018
60-Day Notice Letter

## MAILING LIST

[via email only]

Jeff Sessions, Attorney General
U.S. Department of Justice
Jeff.Sessions@usdoj.gov
askdoj@usdoj.gov

Debra Carfora, Trial Attorney
U.S. Department of Justice, Environmental Defense Section
Debra.Carfora@usdoj.gov

Andrew Coghlan, Trial Attorney
U.S. Department of Justice, Environmental Defense Section
Andrew.Coghlan@usdoj.gov

Alexis Strauss, Acting Regional Administrator
U.S. Environmental Protection Agency, Pacific Southwest, Region IX
Strauss.Alexis@epa.gov

Sylvia Quast, Regional Counsel
U.S. Environmental Protection Agency, Pacific Southwest, Region IX
Quast.Sylvia@epa.gov

Christian Carrigan, Director
California State Water Resources Control Board, Office of Enforcement
Cris.Carrigan@waterboards.ca.gov

Michael Lauffer, Chief Counsel
California State Water Resources Control Board, Office of Chief Counsel
Michael.Lauffer@waterboards.ca.gov

David Boyers, Assistant Chief Counsel
California State Water Resources Control Board, Office of Enforcement
David.Boyers@waterboards.ca.gov

Catherine Hagan, Senior Staff Counsel
California State Water Resources Control Board, Office of Chief Counsel
Catherine.Hagan@waterboards.ca.gov

Mayumi E. Okamoto, Supervising Attorney
California State Water Resources Control Board, Office of Enforcement
Mayumi.Okamoto@waterboards.ca.gov

Robert Byrne, Senior Assistant Attorney General
California Department of Justice, Office of the Attorney General
Robert.Byrne@doj.ca.gov

[Continued on next page]

Acting Commissioner Jose Nuñez          - 11 -          May 14, 2018
60-Day Notice Letter

Michael Cayaban, Supervising Deputy Attorney General
California Department of Justice, Office of the Attorney General
Mike.Cayaban@doj.ca.gov

Noah Golden-Krasner, Deputy Attorney General
California Department of Justice, Office of the Attorney General
Noah.GoldenKrasner@doj.ca.gov

Phillip Hoos, Deputy Attorney General
California Department of Justice, Office of the Attorney General
PhillipM.Hoos@doj.ca.gov

James Smith, Assistant Executive Officer
California Regional Water Quality Control Board, San Diego Region
James.Smith@waterboards.ca.gov

Senator Toni Atkins, Senate President pro Tempore
39th Senate District of California
Senator.Atkins@senate.ca.gov

Senator Benjamin Hueso c/o Ivanna Heard
40th Senate District of California
Ivanna.Heard@sen.ca.gov

Assemblymember Todd Gloria
78th Assembly District of California
Assemblymember.Gloria@assembly.ca.gov
Stephen.Hill@asm.ca.gov

Assemblymember Lorena Gonzalez Fletcher
80th Assembly District of California
Assemblymember.Gonzalez@assembly.ca.gov
Laurel.Brodzinsky@asm.ca.gov